UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


UNITED STATES OF AMERICA                    CRIMINAL ACTION

v.                                          NO. 07-352

JAMES COOLEY                                SECTION "F"


ORDER AND REASONS


Before the Court is James Cooley's motion seeking compassionate release based on concerns arising from the COVID-19 pandemic.  For the reasons that follow, the motion is DENIED.


**Background**


James Cooley has served approximately 70 percent of the 235-month sentence of imprisonment imposed by then-District Judge Engelhardt on August 19, 2009, following Mr. Cooley's plea of guilty to participating in a cocaine drug trafficking conspiracy.[1]

---

[1] Mr. Cooley was first charged in this matter in a fifth superseding indictment on July 10, 2008 as part of what was ultimately charged as a 14-defendant drug trafficking conspiracy case.  Mr. Cooley pled guilty to one count of conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine hydrochloride; he also pled guilty to a second count of a superseding bill of information, which established a federal felony conviction from 2000 for possession with the intent to distribute heroin.  The government and defendant agreed that Cooley was responsible for trafficking 1 kilogram of cocaine hydrochloride.  In the plea agreement and plea colloquy, Mr. Cooley

With two prior felony drug convictions, the Pre-Sentence Investigation Report prepared by the U.S. Probation Office designated Mr. Cooley as a "career offender" under U.S.S.G. § 4B1.1;[2] his total offense level was 34 and his criminal history category was VI -- the highest -- resulting in guidelines advising 262 to 327 months of imprisonment.  Had Mr. Cooley not been classified as a career offender, his offense level would have been 23 and -- still with a criminal history category of VI -- the advisory guidelines range would have been substantially lower, 92 to 115 months.  As a result, much was made of the implications of this career offender designation during Mr. Cooley's sentencing hearing.

Judge Engelhardt considered counsel's arguments and ultimately sentenced Mr. Cooley to a below-guidelines sentence of

---

indicated that he understood that, if the Court accepted the plea, he faced a mandatory minimum penalty of 10 years imprisonment up to life imprisonment as well as a $4 million fine and eight years of supervision following his release from prison.

[2] This career offender enhancement applied due to Cooley's two prior felony drug convictions: (i) possession with the intent to distribute cocaine in Orleans Parish (to which Cooley pled guilty and was sentenced in January 1990 to 10 years in Louisiana Department of Corrections custody, suspended, and 5 years of probation, which was revoked on May 19, 1993, and for which Cooley was sentenced to serve six years in DOC custody); and (ii) the year 2000 federal conviction for possession with the intent to distribute heroin (after serving his 48-month sentence in BOP custody, his supervised release term was revoked on December 10, 2008 after he was convicted of disorderly conduct and possession of marijuana in Texas).

2

235 months of imprisonment.   Following years of unsuccessful appeals and attempts to obtain post-conviction relief, the Court denied Mr. Cooley's three prior requests seeking sentence reductions due to ineligibility.   See Order dtd. 5/6/16 (Engelhardt, J.)(finding that Cooley is ineligible for a reduction because his guidelines calculations were based on his multiple prior drug convictions, which rendered him a career offender under U.S.S.G. § 4B1.1 such that his guideline range remained unchanged by Amendment 782); see Order dtd. 5/4/18 (Engelhardt, J.)(denying motion seeking sentence reduction because Cooley is not eligible based on Amendment 782 and additionally finding no basis to grant the request because Cooley was originally sentenced below the applicable guidelines range); see Order dtd. 10/23/19 (Feldman, J.)(finding that Cooley is not eligible for a sentence reduction under Section 404 of the First Step Act because his conviction is not a "covered offense").

Mr. Cooley is now 49 years old and housed at Forrest City FCI Medium with a projected release date of January 18, 2026. Suffering from various ailments, including chronic kidney disease, asthma, and high blood pressure, Mr. Cooley is concerned about contracting COVID-19 while incarcerated.  He twice requested that the warden seek compassionate release on his behalf, but the warden denied his requests and lost his administrative appeal paperwork

he claims he submitted in connection with his first administrative claim denial.[3]  Represented by the same counsel that represented him when he pleaded guilty and was sentenced, Mr. Cooley now seeks a sentence reduction based on the compassionate release statute in light of the COVID-19 pandemic; in particular, Mr. Cooley seeks a sentence reduction to time-served (approximately 150 months) and seeks transfer to home confinement for a portion of the eight-year supervised release term that was ordered to follow his term of incarceration.

I.

Courts generally "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c).  Few exceptions apply. Since passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), federal courts "may reduce the term of imprisonment" upon an inmate's request and demonstration of certain criteria. § 3582(c)(1)(A); see also United States v. Chambliss, 948 F.3d 691, 692-93 (5th Cir. 2020)(As amended, § 3582(c) provides that the Court "on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after

---

[3] Mr. Cooley filed into the record a form in which he directs a request to prison officials, seeking a response to an appeal he says he filed administratively.

considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'").[4]

"The First Step Act and COVID-19 have redefined the compassionate release landscape." United States v. Jones, 980 F.3d 1098, 1100-01 (6th Cir. 2020)("The First Step Act of 2018's provision allowing incarcerated persons to file their own § 3582(c)(1)(A) motions coupled with COVID-19's pernicious presence in federal prisons triggered a massive upswing in imprisoned persons seeking compassionate release; 10,940 persons applied for compassionate release in the first three months of the pandemic alone."). A new statutory remedy coupled with an historic pandemic presenting unique challenges to institutional living environments has triggered a perfect storm for interpretation conflicts in the case literature. First, the Court is confronted with a conflict concerning exhaustion. Second, the Court addresses a conflict concerning eligibility and the scope of "extraordinary and compelling" reasons, considering any "applicable" Sentencing Commission policy. Finally, the Court proceeds to determine whether, even assuming Mr. Cooley is eligible for relief, consideration of applicable § 3553(a) factors counsels against a sentence reduction.

---

[4] Before 2018, only the Bureau of Prisons could request that a court modify a prisoner's sentence.

II.

*A.*

Through § 3582(c)(1)(A), Congress allows courts to consider inmate requests seeking sentence reductions

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier....

In other words, the prisoner may file a motion in court the earlier of: exhausting administrative rights to appeal the BOP's failure to bring a motion, or 30 days after the warden's receipt of the prisoner's request. See United States v. Jefferson, 831 Fed.Appx. 685, 686 (5th Cir. 2020)(unpublished, per curiam). "Both [exhaustion] routes," the Fifth Circuit has observed, "begin with the defendant requesting that 'the Bureau of Prisons' 'bring a motion on the defendant's behalf.'" United States v. Franco, 973 F.3d 465, 467 (5th Cir. 2020), cert. denied, 2020 WL 7132458 (U.S. 12/7/20). In Franco, the defendant's noncompliance with the exhaustion requirement was clear: she conceded that she did not request that the BOP bring a motion on her behalf. The Fifth Circuit joined other Circuits determining that the requirement that a defendant must file a request with the BOP before filing a motion in federal court imposes a non-jurisdictional, "mandatory claim-processing rule" that a "court *must* enforce" when "properly

raised" by the Government.   See id. at 468 (emphasis added in Franco, quoting Pierre-Paul v. Barr, 930 F.3d 684, 692 (5th Cir. 2019)).[5]

The statutory text is clear that an inmate must first submit a request to the warden and wait 30 days before seeking relief from the Court.  Thus, the plainest case of exhaustion is when an inmate submits a request to the warden, the warden fails to respond within 30 days, and then inmate files a motion in court.[6]  When an inmate's request is administratively denied before 30 days have lapsed, the statute's exhaustion requirements have been inconsistently construed.  Some district courts have held that a compassionate release petitioner satisfies the exhaustion

_____

[5] Since Franco, the Fifth Circuit has issued a *per curiam* opinion affirming a district court's denial of a compassionate release motion on exhaustion grounds and on the merits.  United States v. Harmon, 834 Fed.Appx. 101 (5th Cir. 2021)(per curiam)(affirming district court's denial of defendant's motion on the ground that she failed to exhaust her administrative remedies because she did not file a motion with the warden before seeking relief from the district court and additionally affirming the district court's finding that the defendant failed to establish "that she had a specific health condition that constituted an extraordinary and compelling reason for compassionate release and that release was not warranted due to her conviction of a serious drug offense, her failure to show she was not a danger to the community, and her failure to show how the pandemic had impacted her or warranted her immediate release[;]" the defendant's "disagreement with how the district court balanced the § 3553(a) factors is insufficient to establish an abuse of discretion").
[6] And the clearest case of failure to exhaust is that presented in Franco: where a prisoner either fails to submit a request to the warden or fails to wait 30 days after doing so before filing a motion in court.

requirement only if he fully exhausts administrative appeals after the warden timely denies a request.[7]  Others have determined that an incarcerated person who files his compassionate release request with the warden and waits 30 days before filing a motion in court -- regardless of whether the warden denies the request or fails to respond -- satisfies the statutory exhaustion requirement.[8]  It appears that the Department of Justice has endorsed this more permissive approach, although inconsistently so in this case.[9] That is, when the warden denies an inmate's request before 30 days have lapsed, the inmate may simply wait 30 days and then proceed

---

[7] See, e.g., United States v. Martin, No. 16-70, 2021 WL 197296, at *2-3 (S.D. Miss. Jan. 20, 2021); United States v. Rodriguez, No. 15-198, 2020 WL 5369400, at *2-3 (E.D. La. Sept. 8, 2020)(Feldman J.); United States v. Delco, No. 09-57, 2020 WL 4569670, at *4 (E.D. La. Aug. 7, 2020)(Ashe, J.); United States v. Ellis, No. 13-286, 2020 WL 4050409, at *2 (E.D. La. July 20, 2020)(Vance, J.); United States v. Ng Lap Seng, 459 F. Supp. 3d 527, 535-36 (S.D.N.Y. 2020)(collecting cases).

[8] See United States v. Haney, 454 F. Supp. 3d 316, 321 (S.D.N.Y. 2020).

[9] Compare United States v. Harris, 812 Fed.Appx. 106, 107 (3d Cir. 2020)(noting that the DOJ conceded that its exhaustion argument requiring an administrative appeal of the warden's denial was incorrect and the Third Circuit agreeing that the argument was error, concluding in a non-precedential opinion that the statute allowed two ways to proceed to district court as long as the inmate made a request to the warden) and Rec.Doc. 818, pp.9 and 15 n.15 and 17 (indicating that the DOJ and the U.S. Attorney's Office for the EDLA agrees with Harris) with Rec.Doc. 818, p. 14 (stating that Mr. Cooley "failed to exhaust his administrative remedies before filing his motion in district court because he filed his motion without first appealing his denial by the warden of his request for compassionate release.").

to court without "fully exhaust[ing] all administrative rights to appeal[.]"

Does the lapse provision contain an implicit futility component; put differently, does it apply *only* when the warden fails to respond within 30 days?  The Fifth Circuit has acknowledged, but not resolved, the debate.  See United States v. Ward, 832 Fed.Appx. 334 (5th Cir. 2020)(unpublished, per curiam)(finding it unnecessary to resolve the interpretation issue because Ward failed to wait 30 days and, thus, failed to exhaust his claim under either construction).[10]

*B.*

Here, Mr. Cooley has satisfied the exhaustion requirement, or the government has failed to "properly" raise its exhaustion objection.

---

[10] The Fifth Circuit noted that the Third Circuit (in a *per curiam* opinion) adopted Ward's proposed construction of the statute when it reversed a district court's holding that a defendant was required to fully exhaust his administrative remedies because the BOP responded to his request within the 30 day period.  Id. at 335 n.1 (citing United States v. Harris, 973 F.3d 170, 171 (3d Cir. 2020)(per curiam)).  The Fifth Circuit also noted that the Seventh Circuit, albeit in dicta, might construe § 3582(c)(1)(A) differently from the Third Circuit insofar as the Seventh Circuit indicated that the statute permits courts "to grant compassionate release on a prisoner's own request, provided that the prisoner first allowed the [BOP] to review the request and make a recommendation (or it let 30 days pass in silence)." Id. (citing United States v. Gunn, 980 F.3d 1178, 1179 (7th Cir. 2020)).

"Those who seek a motion for compassionate relief under the First Step Act must first file a request with the BOP." <u>Franco</u>, 973 F.3d at 469.  Mr. Cooley did so, twice.  And he waited more than the requisite 30 days before his attorney filed this motion seeking compassionate release.  If the Court applies the statutory construction embraced by the DOJ, <u>Harris</u>, many other courts, and the government in this very case,[11] then Mr. Cooley has satisfied the "lapse of 30 days" administrative exhaustion requirement.

But the government alternatively submits (contrary to the DOJ's position in <u>Harris</u> and in many other cases in which the government has responded to motions in this Court) that Mr. Cooley has failed to exhaust his administrative appeals of the warden's two denials and thus fails to comply with the statutory exhaustion requirement.  If Mr. Cooley was required to fully exhaust administrative appeals of the warden's denial of his request

---

[11] <u>See</u>, <u>e.g.</u>, Rec.Doc. 818, at p. 9 n.15 (citing <u>Harris</u>)("The government[] maintains that, under 3582(c)(1)(A), either exhaustion of BOP administrative appellate rights or the expiration of thirty days after transmitting request to the warrant —"whichever is earlier"—is all that is required for a court to consider the motion.") and Rec.Doc. 8181, at p. 12 n.17 (noting that the Fifth Circuit has yet to resolve the debate among district courts concerning whether an incarcerated person must exhaust BOP appellate remedies before filing with the court if a warden denial denies a request within 30 days, but indicating that "the government disagrees and has conceded otherwise" and citing with approval <u>Harris</u> as the government's position that "an inmate may file a request in the district court thirty days after presenting the request to the warden, whether the administrative process is complete or not").

because the warden's denial issued before 30 days lapsed, then the Court must reconcile the government's competing arguments.

Assuming that the Court is obliged to consider the government's conflicting submission (which ostensibly departs from DOJ policy) that Mr. Cooley was required to "first appeal[] his denial by the warden" before pursuing his sentence reduction motion, it is undisputed that Mr. Cooley failed to exhaust his administrative remedies with respect to his *second* request to the warden.  Respecting his first request to the warden, however, Mr. Cooley submits that he indeed lodged an administrative appeal.  He claims prison officials lost his appeal paperwork.  Insofar as the government neither disputes nor mentions this representation or its supporting evidence of record, the government fails to offer up a contested fact issue on its conflicting theory that Mr. Cooley failed to exhaust his administrative appeals.  The government thus fails to properly raise or dispute Mr. Cooley's submission on the issue of exhausting administrative appeals.

Here, there is no dispute that Mr. Cooley lodged two requests with the warden, and it is undisputed that he also lodged an administrative appeal after the first denial and before his second request to the warden.  Insofar as the government alternatively challenges Mr. Cooley's failure to fully exhaust administrative appeals, the government fails to genuinely contest Mr. Cooley's

argument and evidence and, thus, the government has failed to properly raise or support this argument, thereby waiving it. Whether the Court considers the first request exhausted or both the first and second, it is appropriate to reach the merits of his request.[12]

### III.

### *A.*

Three substantive criteria guide the Court's discretion in determining whether an incarcerated person has demonstrated that a sentence reduction is warranted:

- "extraordinary and compelling reasons warrant ... a reduction";[13]

- the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission"; and

- the applicable sentencing factors in § 3553(a) support a reduction.

---

[12] Even if Mr. Cooley has not exhausted his claim or the government's exhaustion argument that departs with DOJ policy is not deemed waived, under the circumstances, the Court need not conclusively resolve the exhaustion debate before reaching the merits of compassionate release motion. See United States v. Jefferson, 831 Fed.Appx. 685, 686 (5th Cir. 2020)(unpublished, per curiam)(noting that the district court did not address exhaustion and "because the case is easily resolved on the merits, we need not resolve if the case should have been dismissed on procedural grounds").

[13] "Extraordinary and compelling reasons" is found at subsection (i); Mr. Cooley is ineligible for relief under subsection (ii) because he is not "at least 70 years of age," and he has not "served at least 30 years in prison[.]" 18 U.S.C. § 3582(c)(1)(A)(ii).

See 18 U.S.C. § 3582(c)(1)(A).[14]  As the petitioner, Mr. Cooley has the burden to show that a sentence reduction is warranted.  See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).  Notably, and ultimately dispositive here, even if a compassionate release petitioner is eligible relief (i.e., he demonstrates that extraordinary and compelling reasons warrant a sentence reduction), consideration of applicable § 3553(a) factors may nevertheless persuade the Court to exercise its discretion to deny the motion.  See Chambliss, 948 F.3d at 693-94 (affirming the district court's denial of motion seeking sentence reduction in light of the § 3553(a) factors, notwithstanding the petitioner's terminal disease constituting an extraordinary and compelling reason for a reduction).

*B.*

Congress does not define "extraordinary and compelling reasons" but, rather, delegated that task to the Sentencing

---

[14] Relying on the parallel language of Sections 3582(c)(1) and (c)(2), the Sixth Circuit has determined that Dillon v. United States, 560 U.S. 817 (2010) confirms that § 3582(c)(1)(A) calls for a sequenced three-party inquiry, with the second step inapplicable to prisoner motions because there is no "applicable" policy statement to consult.  See United States v. Jones, 980 F.3d 1098, 1106-07 (6th Cir. 2020)(describing § 3582(c)(1)(A)'s phrasing as "confusing" with "oddly placed commas" and ultimately determining that the second "applicable policy statement" portion of the step is inapplicable to prisoner motions).

Commission, which defines "extraordinary and compelling reasons" in the advisory notes to a policy statement found at U.S.S.G. § 1B1.13.  Whether the First Step Act rendered § 1B1.13 inapplicable (or otherwise downgraded it from binding to merely helpful authority) in cases where an incarcerated person files a motion for compassionate release such that district courts have full discretion to determine what "extraordinary and compelling" reasons justify compassionate release is fodder for debate in the case literature; a debate that remains unresolved in the Fifth Circuit.

U.S.S.G. § 1B1.13 -- the only *potentially* "applicable policy statement" -- implements the compassionate release statute. "Provided [that] the defendant" is not a danger to the safety of any person or to the community, the policy statement's application notes offer four categories of extraordinary and compelling reasons: medical conditions, age, family circumstances, and "other" reasons -- the latter, a catchall expressly conferred to the discretion of the Director of the Bureau of Prisons.  See id. cmt. n.1(A)-(D).  Notably, the policy statement (i) is expressly constrained to motions and determinations by the Director of the Bureau of Prisons, not prisoner motions;[15] and (ii) has not been

_____

[15] See U.S.S.G. § 1B1.13 ("Upon motion of the Director of the Bureau of Prisons...") & cmt. n.1(D)("As determined by the Director of the Bureau of Prisons...") & cmt. n.4("[a] reduction under this

14

amended since the First Step Act expanded the compassionate release remedy to prisoner-initiated motions.[16]  As such, an increasingly resounding consensus finds that the Sentencing Commission has not yet issued a policy statement "applicable" to prisoner requests for sentence reductions.  See, e.g., United States v. McCoy, 981 F.3d 271, 281-82, 286-87 (4th Cir. 2020)(joining the Second, Sixth, and Seventh Circuits in holding that there currently exists no "applicable policy statement" governing prisoner motions such that district courts may consider any extraordinary and compelling reason for release raised by a petitioner, including the severity of the defendants' sentences, coupled with the disparity between those sentences and sentences they would receive today); United States v. Gunn, 980 F.3d 1178, 1180-81 (7th Cir. 2020)(because the U.S.S.G. lacks an "applicable" policy statement, "the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion" although the Sentencing Commission's analysis may guide discretion); United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020)(where incarcerated persons seek compassionate release, district courts "have full discretion to define 'extraordinary and compelling' without consulting the policy

---

policy statement may be granted only upon a motion by the Director of the Bureau of Prisons").

[16] And, as the Second Circuit has observed, no update is forthcoming given that the Commission presently lacks a quorum.  United States v. Brooker, 976 F.3d 228, 234 (2d Cir. 2020).

statement § 1B1.13."); United States v. Brooker, 976 F.3d 228, (2d Cir. 2020)(generally holding that the First Step Act allows courts to exercise discretion, unconstrained by U.S.S.G. § 1B1.13, to determine what reasons are "extraordinary and compelling" and specifically finding that an unduly lengthy sentence is a circumstance a court may consider in determining whether extraordinary and compelling reasons justify a sentence reduction).[17]

Consideration of these authorities persuasively suggests that the "trailing paragraph" of § 3582(c)(1)(A) -- which requires that a reduction be consistent with applicable policy statements -- does not limit the district court's discretion because § 1B1.13 is a policy statement not "applicable" to, much less binding on, prisoner-initiated applications for compassionate release.   The Fifth Circuit has yet to weigh in on the split, other than to suggest that § 1B1.13 is at least helpful, non-binding authority on what qualifies as extraordinary and compelling.   See United

---

[17] Compare these authorities with, e.g., United States v. Aruda, 472 F. Supp. 3d 847 (D. Haw. 2020)(collecting district court cases)(determining that the Sentencing Commission's commentary in the application notes to U.S.S.G. § 1B1.13 is binding interpretation of "extraordinary and compelling" and rejecting the defendant's proffered "freewheeling approach to compassionate release" in favor of the Supreme Court's pronouncement in Stinson v. United States, 508 U.S. 36, 39 (1993) that courts are not permitted to treat the Sentencing Commission's commentary as merely "persuasive" authority).

States v. Thompson, 984 F.3d 431, 433 (5th Cir. 2021)(noting that
the commentary to § 1B1.13 is "not dispositive" but "informs our
analysis" and expressly "opt[ing] not to weigh in on the split of
authority as to whether ... courts properly can invoke [§1B1.13's]
catch-all provision"); see also United States v. Byrd, ---
Fed.Appx. ---, 2021 WL 435105, at *2 (5th Cir. Feb. 8,
2021)(unpublished, per curiam)(the district court did not err
insofar as it consulted the definitions in § 1B1.13 as helpful,
non-binding guidance); see also United States v. Rivas, 833
Fed.Appx. 556 (5th Cir. 2020)("Though not dispositive, we are
guided in our analysis by the commentary for U.S. Sentencing
Guidelines § 1B1.13[.]"); see also United States v. Gonzalez, 819
Fed.Appx. 283, 284 (5th Cir. 2020)(per curiam)(finding no error
insofar as the district court "relied on its own judgment" in
denying prisoner motion; contrary to the defendant's contention,
"there is no indication in the district court's order that it
treated U.S.S.G. § 1B1.13 'as the dispositive boundary of what may
be judicially determined to be extraordinary and compelling
reasons for a sentence reduction for medical reasons.'"); but see
United States v. Bell, 823 Fed.Appx. 283, 284 (5th Cir.
2020)(unpublished, per curiam)(denying motion to proceed IFP and
dismissing appeal as frivolous where Bell "failed to identify an
extraordinary and compelling reason for compassionate release that

is 'consistent with applicable policy statements issued by the Sentencing Commission'").

Putting aside the inconsistency in the case literature concerning whether § 1B1.13 is a policy statement "applicable" to inmate requests for sentence reductions (and if so whether the policy statement is binding), the Court turns to consider whether Mr. Cooley has shown that extraordinary and compelling reasons warrant relief. Insofar as the Fifth Circuit directs that § 1B1.13 may be helpful to the task, relevant here,[18] the policy statement indicates that "extraordinary and compelling reasons" are presented if the defendant is

(I) suffering from a serious medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover

---

[18] It is undisputed that Comment Note 1(A)(i) is not implicated insofar as Mr. Cooley is not suffering from a terminal illness such as "metastic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." Nor does Mr. Cooley invoke age or family circumstances that might qualify as extraordinary or compelling circumstances. See U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).[19]

*C.*

The parties quarrel over whether the Court's discretion is limited by the Sentencing Commission's policy statement in determining what constitutes extraordinary and compelling reasons. But the government ultimately concedes eligibility under the policy statement due to Mr. Cooley's chronic kidney disease, which increases his risk of an adverse outcome should he contract COVID-19. And the only "other reasons" Mr. Cooley urges the Court to consider "extraordinary and compelling" are, in reality, considerations relevant to the § 3553(a) analysis. Thus, this is not a case in which eligibility is seriously contested.

It is undisputed that the CDC recognizes chronic kidney disease as a health condition with severe risk of complications from COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-coditions.html

---

[19] Mr. Cooley invokes neither the age nor family circumstances components of the application note. The application note also confers on the BOP the authority to identify "other reasons" beyond those set forth in the application note. See id., cmt. n.1(D). The government submits that BOP retains sole authority to determine any "other reasons" beyond those set forth in application note 1(A) through (C). As indicated, the government's position that the policy statement is binding clashes with the text of U.S.S.G. § 1B1.13, its application notes, and a growing consensus in the case literature, as well as the Fifth Circuit's limited consideration, albeit in unpublished opinions or dicta.

And, hypertension and asthma are conditions that the CDC indicates "might" increase the risk of severe illness. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

"[I]n some exceptional cases," the Fifth Circuit has observed, "[courts] have granted compassionate release where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID" but there is no "unanimous" agreement that "every high-risk inmate with preexisting conditions" demonstrates an extraordinary and compelling reason. United States v. Thompson, 984 F.3d 431, 434 (5th Cir. 2021)(noting that those courts that granted compassionate release where the defendant demonstrated an increased risk of serious illness "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In Thompson, the Fifth Circuit affirmed a denial of compassionate release for a defendant who suffered from hypertension, high cholesterol, and had previously suffered a stroke. Id. (observing that "nearly half of the adult population in the United States suffers from hypertension[,] roughly 12% of Americans suffer from high cholesterol. Thus, we cannot say that either of those conditions makes Thompson's case 'extraordinary.' Unfortunately, both are commonplace.").

The record shows that Mr. Cooley suffers from several medical conditions, including one (chronic kidney disease) that places him at a higher risk of severe symptoms or an adverse outcome should he contract COVID-19 and two others (asthma and hypertension) that might also put him at a higher risk. There is no dispute that each of Mr. Cooley's medical conditions are stable and well managed with treatment and medication, and that Forrest City FCI has implemented measures that have allowed it to control the spread of the virus.[20]

Mr. Cooley submits that, during this historic pandemic, his health conditions qualify as extraordinary and compelling reasons supporting early release from prison. The government counters that an inmate who has a condition which the CDC indicates "might" increase the risk of severe illness falls short of presenting an "extraordinary and compelling reason" for compassionate release under the statute and U.S.S.G. § 1B1.13. But the government nevertheless concedes that Mr. Cooley's chronic kidney disease is recognized by the CDC as a condition that places Mr. Cooley at an increased risk of severe illness from COVID-19 and, therefore, he

---

[20] At Forrest City FCI Medium, BOP reports that 127 inmates and 23 staff confirmed positive test results for COVID-19, with zero deaths resulting from the virus.

"passes the eligibility threshold as defined by the" sentencing guideline.[21]

Because the government essentially concedes eligibility -- that is, Mr. Cooley's chronic kidney disease places him at an increased risk of severe illness were he to contract COVID-19 and thus amounts to an extraordinary and compelling reason during the pandemic -- the Court need not conclusively resolve the eligibility issue.

*D.*

Assuming that Mr. Cooley's chronic kidney disease (and asthma and hypertension) coupled with pandemic conditions in BOP custody, constitute extraordinary and compelling circumstances, the government submits that consideration of the applicable section

---

[21] More than once in its briefing, the government argues that Mr. Cooley's chronic kidney disease technically qualifies as an extraordinary and compelling reason supporting eligibility for a sentence reduction under the government's (albeit, hyper-technical) conception of and assumption that the "applicable" Sentencing Guideline applies. Even so, the government then hedges on eligibility by suggesting that Mr. Cooley's health conditions do not prevent him from providing self-care within his correctional facility, given that the conditions are controlled with treatment including medication. As this Court has previously observed when confronted with the government's inconsistent positions: "It is certainly permissible for the government to advance alternative arguments, but any persuasive appeal is lost when diametrically opposed arguments are advanced, one of which ostensibly defies general DOJ policy." See United States v. Ceasar, No. 16-174, 2021 WL 662160, at *5 n.14 (E.D. La. Feb. 18, 2021).

3553(a) factors and the fact that Mr. Cooley remains a danger to the community weigh against early release.  The Court agrees.[22]

Once an inmate satisfies the mandatory exhaustion requirement, the statute directs the Court to consider the factors set forth in § 3553(a) to the extent they are applicable.  These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the offense's seriousness or promote respect for the law or to afford adequate deterrence, and to protect the public from further crimes; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense or defendant; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records; and (7) the need to provide restitution to any victims of the offense.  Balancing the applicable factors falls within the Court's discretion and mere disagreement with how the factors are balanced is insufficient to warrant relief on appeal.  United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

---

[22] That Mr. Cooley has served the lion's share of his sentence makes this a closer call than the government portrays.  It is the Court's understanding that the outgoing United States Attorney's policy was to oppose each and every motion for compassionate release, regardless of the circumstances, eligibility, or merit.

The same factors that compelled Judge Engelhardt to impose a 235-month term of imprisonment compel denial of Mr. Cooley's motion to reduce that term.

Counsel for Mr. Cooley continues to submit that the career offender enhancement disproportionately impacted Mr. Cooley's sentencing exposure. Judge Engelhardt considered this argument at sentencing and observed that

> I realize the career offender enhancement comes into play here in a major way, but we also have a Defendant who's a Criminal History Category VI[,] which, you know, in my view is equally troubling as well. I realize that that may indicate where he would, in my opinion, where he would fall within the guideline range, but a Criminal History Category VI is the highest category. Obviously, you don't get a Category VI on your criminal history for making a few mistakes, or having bad judgment, or falling in with the wrong crowd. I think it takes some persistence to get a Criminal History Category VI. Have you anything to add in light of the Criminal History Category[?]

Mr. Wainwright responded that

> having a Criminal History Category of VI does not automatically generate a 262-month sentence[; rather,] just reflecting that this anomalous provision that came into play because of his revocation...the addendum to the [PSR] with a Criminal History Category VI the guideline range would be 92 to 115[.] [W]hen we look at guidelines we said we would plead to a ten-year minimum sentence to make certain that his minimum sentence was at least 120 months, none of us were thinking that actually he was getting some kind of bargain because he was facing 262 ... months. ... [U]nder the mandatory scheme we would have filed a Motion to Withdraw Plea and come back and ... try[] to hammer things out. Under the

> current [advisory] regime we pray that courts will see
> this anomalous calculation [and factor that in and
> consider] there's no firearms in his background. There's
> no violence.

Rec.Doc. Tr. p. 17, 18-19.

In imposing the 235-month sentence, Judge Engelhardt
considered the § 3553(a) factors:

> [T]he Court has considered pursuant to 18 United
> States Code Section 3553(a)(4) the mandatory minimum
> sentence required by statute, the sentencing range
> established by the U.S. Sentencing Guidelines applicable
> to this Defendant, and the other statutory concerns
> found in Section 3553(a).
>
> In addition, although the Court finds that the
> Defendant's Motion for Downward Departure should be
> denied as a Motion for Downward Departure, the Court has
> given a non-guidelines sentence to the extent that the
> Court has imposed a lesser sentence outside of the
> guideline system which under the calculations here
> provided for a minimum sentence of 262 months. The Court
> finds that a non-guideline sentence is necessary to
> balance the consequences of the Defendant's career
> offender classification with the mitigating role
> reduction to which he otherwise would be entitled and
> which was not permitted under the guideline
> calculation....
>
> The Court finds that the sentence imposed reflects
> the nature and specific circumstances of this offense,
> the seriousness of this offense, the statutory
> requirements, the Defendant's other extensive criminal
> history, and the other relevant facts and circumstances
> that are set forth in the Pre-Sentence Investigation
> Report. These facts and circumstances include but are
> not limited to the Defendant's commission of the instant
> offense while on supervised release as part of his
> sentence for an earlier federal drug conviction ... and
> that it represents his ninth adult conviction. The
> sentence promotes respect for the law, provides the best
> punishment, affords adequate deterrence, and protects
> the public.

These same considerations continue to justify the sentence imposed. Counsel for Mr. Cooley fails to persuade the Court how balancing these factors compels a different outcome today. Counsel's arguments broadly sweep in the deficiencies of the criminal justice system, the overincarceration norm, and speculates without support that Mr. Cooley will not be a danger to the community[23] because he has never been convicted of using firearms in connection with drug trafficking.[24]  Judge Engelhardt considered and addressed the same concerns at Mr. Cooley's sentencing.[25]

---

[23] Mr. Cooley concludes that he poses no danger to the community. In assessing whether Mr. Cooley is "a danger to the safety of any other person or to the community[,]" the Court looks to 18 U.S.C. § 3142(g); its factors are similar to those contained in 3553(a) and include the "nature and circumstances of the offense" and "the history and characteristics" of the defendant. Id. at 3142(g)(1)-(4).  The Court has already determined that the nature of the drug trafficking offense in combination with his prior convictions for drug offenses, at least two which were committed while Mr. Cooley was on probation or other supervision term, militate against early release.

[24] Counsel for Mr. Cooley downplays the weapons offenses, suggesting any weapons offenses occurred when Mr. Cooley was just 17 and underscoring that he was never convicted for possessing a weapon in connection with his drug trafficking crimes.  The Court does not place undue weight on Mr. Cooley's weapons offense, but they are still part of Mr. Cooley's criminal history.  The Court also observes that, according to the PSR, Mr. Cooley's state disorderly conduct conviction involved brandishing a weapon.

[25] During the sentencing hearing, Mr. Cooley's counsel stated that he was blind-sighted by the career offender designation and that the government was likewise unaware that the enhancement would apply when they were negotiating Mr. Cooley's plea deal. Rec.Doc. 568 (Tr. p. 8). Mr. Cooley's counsel objected to the career offender classification because one of the convictions that served

The record confirms that Mr. Cooley's criminal history is extensive, spanning decades of his life.  His lengthy but below-guidelines sentence reflects the seriousness of the drug trafficking conspiracy offense, committed while on supervised release (and not the first time a supervisory type sentence was revoked for persistent criminal conduct); his sentence also continues to serve as a means of promoting respect for the law and to deter future similar conduct.  Mr. Cooley has a "high" risk of recidivism according to BOP counsel and his "pattern" score.[26]

---

as a predicate for the enhancement was beyond the applicable 15-year window of time.  The U.S. Probation Office declined to revise its initial designation, considering that Mr. Cooley's probation was revoked relative to the sentence that exceeded the 15-year applicability period such that the *revocation sentence* was imposed within the applicable 15-year time period and resulted in the defendant being incarcerated during a part of the 15-year time period.

Judge Engelhardt agreed with the U.S. Probation Office, thereby overruling Mr. Cooley's objection to the career offender enhancement.  Rec.Doc. 568 (Tr. p. 7).  In an attempt to persuade Judge Engelhardt to reject the career offender enhancement or depart downwardly, counsel for Mr. Cooley argued at some length regarding how his probation revocation in state court seriously impacted his sentencing guidelines calculation as well as informing his high (the highest) criminal history category, and that any mention of firearms or weapons offenses in his criminal history should have no bearing given that the disposition of any such charges occurred when Mr. Cooley was but 17 years old.

[26] The Court also considers the government's submission that Mr. Cooley has been sanctioned for disciplinary reasons four times while in custody: in 2012, he was sanctioned for destroying property and possessing an unauthorized item; three years later, he was sanctioned for fighting; and in 2018, he refused to obey an order.  This disciplinary conduct, however, must not be considered to the exclusion of the rehabilitative efforts Mr. Cooley has made,

The sentencing Court imposed a below-guidelines sentence which it explicitly fashioned to account for Mr. Cooley's significant criminal history. The sentence imposed reflected the seriousness of the offense, promoted respect for the law, and provided just punishment, whereas a reduction would thwart these objectives. The sentence imposed remains sufficient but not greater than necessary to achieve the purposes articulated in § 3553(a). Because Mr. Cooley has failed to persuade the Court that the § 3553(a) factors support a sentence reduction, his motion must be denied.

Finally, insofar as Mr. Cooley separately requests that the Court place him on home confinement, the Court lacks authority to do so.[27]

---

as evidenced by the scores of certificates for course work, training, and personal development.

[27] That Mr. Cooley has failed to carry his burden to show that he is entitled to a sentence reduction renders academic the debate among the parties concerning whether the Court technically has the authority to order a prisoner's release to home confinement. Only if the Court had granted Mr. Cooley's motion seeking a sentence reduction and imposed home confinement as a condition of supervised release could the Court override the BOP's sole authority to designate placement. See 18 U.S.C. §§ 3582(c)(1)(A), 3583(d), 3583(e)(2); see also U.S.S.G. § 5F1.2. Otherwise, and generally speaking, the Court lacks authority to simply order that Mr. Cooley serve the remainder of his custodial sentence on home confinement. See 18 U.S.C. § 3621(b)(BOP is authorized to designate placement but will consider sentencing court's recommendation); see also § 3582(c)(limiting the Court's authority to modify or reduce a sentence). Whether Mr. Cooley should be moved to home confinement is BOP's prerogative; the Attorney General has provided pandemic

**\* \* \***

Accordingly, IT IS ORDERED: that the defendant's motion seeking compassionate release is DENIED.

New Orleans, Louisiana, March 2, 2021

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

guidance to BOP, which undertakes a screening process to determine whether home confinement is warranted under all the relevant circumstances. As it must, the Court defers to the BOP administrative process concerning requests for home confinement due to COVID-19 concerns.